————o————

## No. 3992.

### (Court of Appeal, Parish of Orleans.)

## MORGAN STATE BANK vs. ILLINOIS CENTRAL RAILROAD COMPANY.

1. Where the carrier parts with the property entrusted to it without first having the bill of lading issued by it exhibited, it shall be responsible and liable to the holder of the bill of lading for the property or its value.

2. The facts do not support the plea of estoppel interposed herein, it not, among other requirements, being shown, that there was any fraud or bad faith in the action of plaintiff.

Appeal from Civil District Court, Division "A."

Saunders & Gurley, for Plaintiff and Appellee.

Gustave Lemle, H. L. Lazarus, for Defendant and Appellant.

ESTOPINAL, J. Plaintiff sues to recover of the defendant the sum of thirteen hundred and seventy-five dollars and fifty-three cents ($1375.53), averring in its petition that on "March 10th, 1904, Drewes & Harvey, a commercial firm of this City, shipped via the New Orleans & Northeastern Railroad Company, to Chicago, Illinois, 100 barrels of granulated sugar, "order notify Steel-Wedeles & Company, Chicago, Ill." and said railroad issued their bill of lading therefor. "That the said 100 barrels of sugar were well and truly worth the sum of thirteen hundred and seventy-five dollars and fifty-three cents ($1375.53), and were duly delivered to the said New Orleans & Northeastern Railroad Company, and proper negotiable bill of lading issued therefor."

474

That the said Drewes & Harvey presented said bill of lading to your petitioner, and obtained from your petitioner on the faith and credit of the said shipment the sum of thirteen hundred and seventy-five dollars and fifty-three cents ($1375.53), which money petitioner actually paid to the said Drewes & Harvey, and obtained the bill of lading as its property. The petition further alleges that the Northeastern Railroad conveyed the said sugar to the terminus of its line, and the same was then delivered to the Illinois Central Railroad Company, which latter company carried the sugar on to Chicago, and that said company became responisble for the safe carriage and delivery of the sugar upon surrender of the bill of lading; that being the holder of the bill of lading, petitioner became the owner of the sugar.

The defendant answering, avers that it is only nominally the defendant in the suit, the real defendant being the Steele-Wedeles Company, the said company being under contract obligations to indemnify the railroad company, defendant, for any damages resulting to it from the acts and delays of the Illinois Central Railroad Company, complained of by the Morgan State Bank.

Defendant further avers "that if the Morgan State Bank came into possession of the bill of lading recited in this petition, it did so to secure an antecedent indebtedness or overdrafts that might be made by said Drewes & Harvey, and that the said bill of lading did not represent an actual cash out-lay by plaintiff contemporaneous with its acquisition, but was held as collateral. etc., etc."

We find the facts to be substantially these: The Morgan State Bank is the holder of a bill of lading representing 100 barrels of sugar, shipped by Drewes & Harvey, a firm formerly doing business in this City, to Chicago, via the defendant company's road. Drewes & Harvey discounted a draft on the Morgan State Bank of thirteen hundred and seventy-five dollars and fifty-three cents ($1375.53), and gave said bank, as surety, the aforementioned bill of lading.

The bill of lading read: "Order notify Steele-Wedeles Company, Chicago, Ill,," and was dated 10th March, 1904.

The sugar having arrived at Chicago, the Morgan State Bank

475

forwarded its draft with bill of lading attached to its correspondent in Chicago, for collection. The draft was duly presented to the Steele-Wedeles Company, and that firm refused acceptance on the ground that the sugar was below grade. Shortly thereafter, the draft was returned to the Morgan Bank."

"Mr. Drewes, of the firm of Drewes & Harvey, at that time happened to be in Chicago, and after some negotiation with Steele-Wedeles Company, sold the sugar to them *entirely without the knowledge or consent of the Morgan State Bank,* and at his request Steele-Wedeles Company, remitted the proceeds direct to Drewes & Harvey."

The Steele-Wedeles Company, under agreement with the Illinois Central Railroad Company to indemnify them against any loss that might occur, got possession of the sugar *without exhibiting any bill of lading or other miniment of title.*

The Morgan State Bank, holder of the bill of lading, was informed of these events after they had occurred."

The facts as recited above are found in plaintiff's brief, and there appears to be no dispute about them.

As we view the case the connection of Steele-Wedeles Company, the consignees who assumed the risk of parting with their money well knowing that the bill of lading with draft attached for thirteen hundred and seventy-five dollars and fifty-three cents ($1375.53), was held by the Morgan State Bank, is a peculiar one to say the least. They had refused to pay the draft of Drewes & Harvey, when presented by the holder of the bill of lading (plaintiff herein), for one hundred barrels of sugar because same did not come up to grade, but a short time after the draft had been returned to the Morgan State Bank, Steele-Wedeles, upon securing a reduction in the price of the sugar of ten cents per 100 pounds, immediately, and without notice to the known holder of the bill of lading, plaintiff herein, paid over to one of the members of the firm of Drewes & Harvey, the price of the sugar, and obtained from the defendant railroad company the delivery and possesion of the sugar.

Both the consignee and the railroad company assumed risks that the defendant railroad company .the only party defendant

here, cannot escape to the prejudice of plaintiff's just rights.

The railroad, as we take it, is the actual defendant, but the only defense made by it is to show justification by the transactions and negotiations which took place between plaintiff and Steele-Wedeles Company. The latter have gotten the railroad in a false, embarrassing, untenable position, and now the railroad says to this company: "get me out of the trouble for which you are responsible."

The railroad having parted with the property without exacting that the bill of lading be exhibited to it, is responsible to the holder of that instrument who is owner, therfore, of the property of the value of same. The defendant carrier assumed the risk upon being indemnified. It has nothing to lose in the end.

One striking fact in this case is, that the railroad company only let go the sugar, without the bill of lading, on the promise of Steele-Wedeles Company to indemnify them from all loss. This shows that the defendant railroad company, and Steele-Wedeles Company both knew that they were doing something out of the usual course of business, otherwise, why should the Steele-Wedeles Company, warrant the railroad company from loss. It shows that Steele-Wedeles Company had reason to suspect there was something "rotten in Denmark," when in ordinary course of business they could have telegraphed for and gotten this bill of lading in less than two days. That they resorted to becoming indemnifiers on the railroad company, instead of so doing, shows that both parties apprehended a claim might be made like the present one. That they are not disappointed in their expectations the present record attests, and they ought not, in good conscience, to escape from liability, nor can the plaintiff be forced to go to Chicago to sue the surety or indemnifier of the principal debtor, who delivered this property without excuse or right. This appears to us to be a matter between plaintiff and defendant and nothing more, and were it not for the plea of estoppel interposed here which we will briefly consider, the discussion would have ended ere this. The doctrine of equitable estoppel is urged and specially set out in the answer. The burden is upon the

party setting up the plea of estoppel, to show this condition, not by inference or presumption, but by convincing proof. We do not think that this burden has been satisfactorily discharged.

The evidence shows that plaintiff at no time abandoned its right to the bill of lading which it held. When plaintiff inquired of the consignees, Steele-Wedeles Company, on April 16th, 1904, "why draft for $1375.53, and another draft (which does not figure here), had not been paid, it received a telegram dated 18th of April, from Steele-Wedeles Company, to the effect that they had remitted direct to Drewes & Harvey." This telegram was confirmed the 20th of April, 1904, by letter and explaining to the bank the status of the affairs of Drewes & Harvey, to which the bank made reply by telegram (April 20th), stating: "Our Mr. Bloom will doubtless call upon you in a day or so."

Mr. Bloom, the evidence shows, did call on Steele-Wedeles Company, and upon the interview which then and there took place, hinges this case.

In the first place the anxiety of Steele-Wedeles Company to get possession of the bill of lading soi disant that Mr. Bloom had agreed that the entire 100 barrels of sugar transaction was at an end, makes their story of the negotiations a bit unreliable, if not suspicious.

We find that even while Mr. Bloom, Manager of the Morgan Bank, was with them in Chicago, and Mr. Bloom denies that he discussed the particuar lot of sugar in controversy here, Steele-Wedeles Company wrote the cashier of the plaintiff bank, saying in part. "He (Bloom), told us that the car about which we wrote you under date of April 18th, had been all straightened out, and now ask you to please mail us the *bill of lading* which evidently, in the meantime, has been returned to you by the Commercial National Bank of this City, (Chicago), direct, or turn same over to Mr. Drewes, so he can mail same to us."

This letter was so strange and impossible, in the light of events to the cashier of the Morgan State Bank, that he sent the letter to Mr. Bloom, at Chicago, saying that he did not understand it. Mr. Bloom says that he did not discuss the question of the draft for $1375.53, or promise the return of the bill of lading, nor do

Steele-Wedeles write the cashier that they demand the bill of lading on the *authority or promise* of Mr. Bloom. the bank's manager. They simply state to the cashier that "Mr. Bloom says that the matter of the draft for $1375.53 is settled, "and ask for the return of the bill of lading. The statement in same letter preceding the one above it: "We saw your Mr. Bloom yesterday, and are sorry that we are unable to take off his hands the one car of sugar which is still at the depot."

Why, this suggests, should Mr. Bloom, whose mission to Chicago, relative to affairs of Drewes & Harvey and Steele-Wedeles Company, had been unsatisfactory, as far as Steele-Wedeles were concerned, have been so solicitious and kind towards them and released them of all obligation to the bank when the bank, by holding the bill of lading, was absolutely secure.

The testimony of Mr. Bloom is worthy of credence, first: because his statements are plausible and in line with business ideas and methods which he doubtless possesses, and this conclusion is strengthened by his admitted integrity and honesty.

If plaintiff had been in any way consulted and had had notice of the negotiations between Drewes & Harvey and Steele-Wedeles Company, and had then made no protest it is possible it would be estopped, but Steele-Wedeles Company undertook to ignore plaintiff ,and even the existence of a bill of lading . We do not think that in deciding the plain issue before us, that it is necessary to enter into a discussion of the business relations between the Morgan State Bank and the firm of Drewes & Harvey, as to whether the said firm did an overdraft business with the bank; the amount of security deposited in the bank by them, or the relation which the bill of lading held by the bank had to the other and prior dealing between them.

It is not the pretext nor the proof required, to say that the bank held on to the bill of lading for an unusual length of time, and then, as a last resort, seeing Drewes & Harvey had gone to the bad, attempted to assert their own under the bill of lading. It was the privilege of the bank to hold the bill of lading and await developments, and Courts will not undertake to fix the motive by mere inferences.

Counsel for defendant had made a very ingenious and strong argument, citing good law, but unfortunately for him the facts are against him. If plaintiff had initiated the steps resulting in the present status, it might, in that case be estopped, but the law is "that silence cannot work an estoppel unless it misleads another to his injury."

Here Steele-Wedeles Company were the responsible authors of the trouble and cannot by mere inference of consent on the part of plaintiff. In Bigelow on Estoppel page 626, we find: "The person, further, who claims the benefit of this estoppel must show that he was ignorant of the truth in regard to the transaction. and he must have been permisably ignorant thereof."

Again on page 655, Bigelow on Estoppel: Where the estoppel turns upon negligence a consideration of first importance arises to-w.t: Whether the conduct of the party alleged to be estopped was the *proximate* cause of the change of position by party claiming the existence of an estoppel." In our opinion it is not shown that Steele-Wedeles Company were lulled into security by any action of or by the silence of plaintiff. The former were thoroughly cognizant of the bad turn which had taken place in the firm of Drewes & Harvey, and made every effort to secure from plaintiff the bill of lading for the 100 barrels of sugar, the price of which Steele-Wedeles had paid Drewes, of Drewes & Harvey.

Plaintiff very properly refused to part with the bill of lading and are entitled to recover on it from defendant.

There is no error in the judgment appealed from, and it is hereby affirmed.

June 18th ,1906.

Rehearing refused Nov. 5, 1906.

Writ refused by Supreme Court Dec. 13, 1906.